IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| ARCPOINT FRANCHISE GROUP, LLC and ARCPOINT HOLDINGS, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. _____ |
| BRADLEY FREITAG, individually, and WELLNESS LABS AND SERVICES, LLC, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs ARCpoint Franchise Group, LLC ("AFG") and ARCpoint Holdings, LLC ("AH") (collectively, "Plaintiffs") state the following for their Complaint against Defendants Bradley Freitag ("Freitag"), individually, and Wellness Labs and Services, LLC ("Wellness Labs") (collectively, "Defendants").

## NATURE OF THE ACTION

1.      This is an action at law and in equity for breach of contract, service mark infringement, unfair competition, false designation of origin, and unfair trade practices. Plaintiffs' claims arise under Sections 32 and 43(a) of the Federal Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C §§ 1114, 1125(a); the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 *et seq.*; and the common law of the State of South Carolina.

2.      In addition to seeking the recovery of damages, this action also seeks to enjoin Defendants from willfully and unlawfully violating the law and certain contractual covenants.

## PARTIES

3.      Plaintiffs AFG and AH are related South Carolina limited liability companies with their principal places of business located at 101 North Main Street, Suite 301, Greenville, South Carolina 29601.

4.      Upon information and belief, Defendant Wellness Labs is a Virginia limited liability company with its principal place of business located at 25 Canter Place, Stafford, Virginia 22556, and which may be served through its registered agent, Registered Agents Inc., at 4445 Corporation Lane, Ste 264, Virginia Beach, Virginia 23462.

5.      Upon information and belief, Defendant Freitag is a natural person who is a citizen and resident of the State of Virginia, and who may be served at 25 Canter Place, Stafford, Virginia 22556.

6.      Upon information and belief, Defendant Freitag is the principal and owner of Defendant Wellness Labs.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over the federal claims alleged herein pursuant to Lanham Act § 39, 15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1331 and 1338(a). As to the related state law claims alleged herein, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over Defendants because they did business in this District, because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and by agreement of the parties.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because, upon information and belief, Defendants did business in this District, because a

#109781v1                                    2

substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and by agreement of the parties.

## FACTUAL BACKGROUND

**A.    The ARCpoint® Franchise System and AH's Federally-Registered ARCpoint Mark**

10.    AFG is the franchisor of a nationwide system of over 100 franchised businesses, operating in the United States, which provide collection and related services for drug, alcohol, and DNA testing and screening, among other laboratory services, for businesses and individuals.

11.    AFG and its franchisees operate these businesses under the service mark and trade name "ARCpoint," standing alone and in combination with other word and design elements, and these businesses operate in accordance with a business system and format using service marks, trade dress, and business methods proprietary to AFG and its affiliate, AH, which owns and licenses to AFG the "ARCpoint" service mark.

12.    Beginning at least as early as January 2010, Plaintiffs, themselves and/or through their predecessors-in-interest and their authorized licensees, adopted and began using the service mark "ARCpoint," both standing alone and in combination with other words and design elements, in interstate commerce in the United States for the purpose of identifying the services provided by the ARCpoint franchise system, and distinguishing those services from the services of others. Plaintiffs, themselves and/or through their predecessors-in-interest and their respective authorized licensees, have advertised and sold services in interstate commerce in the United States under the "ARCpoint" name and mark continuously since at least as early as January 2010.

13.    On November 23, 2010, AH's predecessor-in-interest was granted U.S. Service Mark Reg. No. 3,881,304, showing the mark "arcpoint" in standard characters, on the Principal

Register of the U.S. Patent and Trademark Office (the "USPTO") for use in connection with "medical testing, namely, DNA testing for determination of paternity; drug, alcohol and steroid use screening services for background screening purposes" in International Class 44 (the "'304 Registration").

14.     Also on November 23, 2010, AH's predecessor-in-interest was granted U.S. Service Mark Reg. No. 3,881,303, showing the mark "arcpoint accurate. reliable. confidential testing," together with the design element shown below, on the Principal Register of the USPTO for use in connection with "medical testing, namely, DNA testing for determination of paternity; drug, alcohol and steroid use screening services for background screening purposes" in International Class 44 (the "'303 Registration").



15.     On January 1, 2013, AH's predecessor-in-interest was granted U.S. Service Mark Reg. No. 4,266,805, showing the mark "ARCPOINT LABS" in standard characters, on the Principal Register of the USPTO for use in connection with "medical testing, namely, DNA testing for determination of paternity; medical testing services, namely, drug, alcohol and steroid use screening services for background screening purposes" in International Class 44 (the "'805 Registration").

16.     On March 19, 2013, AH's predecessor-in-interest was granted U.S. Service Mark Reg. No. 4,304,236, showing the mark "arcpoint labs," together with the design element shown below, on the Principal Register of the USPTO for use in connection with "medical testing, namely, DNA testing for determination of paternity; medical services, namely, drug, alcohol and

steroid use screening services for background screening purposes" in International Class 44 (the "'236 Registration").



17.    The '304 Registration, '303 Registration, '805 Registration, and '236 Registration, which AH duly acquired by assignment from its predecessor-in-interest, have become incontestable pursuant to the provisions of 15 U.S.C. § 1065 and therefore constitute conclusive evidence of the validity of the marks shown therein, and of the registration of said marks, of AH's ownership of said marks, and of AH's exclusive right to use and to license the right to others to use said marks in commerce on the services specified therein. A true and correct copy of these registrations is attached as **Exhibit A** and incorporated herein by reference.

18.    In addition to the '304 Registration, '303 Registration, '805 Registration, and '236 Registration, AH also owns all common law rights in and to the "ARCpoint" service mark, both standing alone and in combination with other words and design elements, for use in connection with the provision of collection and related services for drug, alcohol, and DNA testing and screening, among other laboratory services, for businesses and individuals. These common law rights, together with AH's rights in the 304 Registration, '303 Registration, '805 Registration, and '236 Registration, are referred to collectively hereinafter as the "ARCpoint Mark."

19.    AH owns the ARCpoint Mark, all the goodwill associated therewith, and the registrations referenced above (which registrations remain valid and subsisting).

20.    As a consequence of the inherent distinctiveness of the ARCpoint Mark and by

virtue of the long and continuous use and extensive promotion of that mark, the consuming

public and the trade have come to recognize, and do recognize, the ARCpoint Mark as being

used by Plaintiffs or by a single source, and to associate and identify said mark with Plaintiffs or

with a single source. Plaintiffs derive substantial goodwill and value from this identification by

the consuming public and the trade.

**B.     The Franchise Agreement, Guaranty, and Non-Compete Agreement**

21.     AFG has established standard specifications, policies, and procedures that govern

the operation of the ARCpoint franchise system and protect the valuable goodwill and uniformity

associated with the ARCpoint Mark and distinctive business system.

22.     Persons desirous of becoming ARCpoint franchisees must agree to conform with

AFG's uniform requirements and quality standards, as well as abide by all terms and conditions

contained in the ARCpoint franchise agreement. They also receive specialized training in the

ARCpoint system for operating an ARCpoint franchised business. Upon execution of a franchise

agreement and completion of that training, franchisees receive access to the ARCpoint Mark and

system, as well as the confidential and proprietary business materials and information developed

by AFG over the course of many years of franchising and operating such businesses, including

AFG's Confidential Operations Manual.

23.     Defendant Wellness Labs, as the successor to Defendant Freitag, is the franchisee

under a franchise agreement with Plaintiff AFG, dated February 21, 2014 (the "Franchise

Agreement"), which set out the terms pursuant to which Wellness Labs was authorized to

independently own and operate an ARCpoint franchise business located at 121 Park Hill Drive,

Suite B, Fredericksburg, VA 22401 (the "Fredericksburg Lab"). A true and correct copy of the

Franchise Agreement—together with all pertinent exhibits, schedules, and other attachments—is

attached as **Exhibit B** and incorporated herein by reference.

24.     Concurrently with entering into the Franchise Agreement, and as inducement to AFG to enter into the Franchise Agreement, Defendant Freitag entered into an Unlimited Guaranty and Assumption of Obligations with AFG (the "Guaranty"), whereby he personally and unconditionally guaranteed all financial and performance obligations under the Franchise Agreement. A true and correct copy of the Guaranty is attached as Attachment C to the Franchise Agreement and incorporated herein by reference.

25.     Also concurrently with entering into the Franchise Agreement, and as an inducement to AFG to enter into the Franchise Agreement, Defendant Freitag entered into a Nondisclosure and Non-Competition Agreement (the "Non-Compete Agreement"). A true and correct copy of the Non-Compete Agreement is attached as Attachment B to the Franchise Agreement and incorporated herein by reference.

26.     Pursuant to Section 4.1 of the Franchise Agreement, the initial term of the agreement was for ten years from February 21, 2014, "unless sooner terminated pursuant to Section 15."

27.     In Sections 3 and 11 of the Franchise Agreement, Wellness Labs agreed to make certain payments to AFG, including royalty fees equal to seven percent of monthly gross sales, and marketing fund contributions equal to two percent of monthly gross sales. Thus, for the purpose of calculating and confirming these royalty fee and marketing fund contributions, Wellness Labs also agreed to provide AFG with monthly gross sales reports, pursuant to Section 12.2 of the Franchise Agreement.

28.     In Section 6.1 of the Franchise Agreement, Wellness Labs acknowledged that its right to use the ARCpoint Mark was derived solely from the Franchise Agreement, and that any

unauthorized use of the ARCpoint Mark would be a "breach of this Agreement and an infringement of the rights of Franchisor in and to the Marks."

29.　　Further, Wellness Labs agreed in Section 6.1 of the Franchise Agreement that it would not, "at any time during the term of this Agreement or after its termination or expiration, contest the validity or ownership of any of the Marks or assist any other person in contesting the validity or ownership of any of the Marks."

30.　　In Section 6.2 of the Franchise Agreement, Wellness Labs agreed not to use the ARCpoint Mark "in connection with the sale of any unauthorized product or service or in any other manner not expressly authorized in writing by Franchisor."

31.　　Under Section 15.2.1.14 of the Franchise Agreement, AFG has the right to terminate the Franchise Agreement, "without any opportunity to cure by Franchisee," if Wellness Labs, among other things, "fails on two (2) or more separate occasions within any period of twelve (12) consecutive months to submit reports or other information or supporting records when due, to pay any Royalty Fee, Marketing Fund Contribution, amounts due for purchases from Franchisor and any Affiliate, or other payment when due to Franchisor or any Affiliate, . . . ."

32.　　Section 17.1 of the Franchise Agreement provides that, upon termination of the Franchise Agreement, Wellness Labs must, among other things:

　　　　a)　　immediately cease to operate the Fredericksburg Lab and not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of AFG (§ 17.1.1);

　　　　b)　　cease to use the trade secrets, confidential information, system, and Marks of ARCpoint including, without limitation, all signs, slogans, symbols,

logos, advertising materials, stationery, forms and any other items which display or are associated with the Mark (§ 17.1.2);

c) pay all sums owing to AFG, including, among other things, all unpaid royalties and lost future royalties (§§ 17.1.4); and

d) immediately return to AFG the operations manual and all other confidential information including records, files, instructions, brochures, agreements, disclosure statements and any and all other materials provided by AFG to Wellness Labs relating to the operation of the Fredericksburg Lab, and permanently remove any electronic copies or backup of the manual and all other confidential information (§ 17.1.4).

(Collectively, the "Post-Termination Obligations.")

33.     In Section 17.2 of the Franchise Agreement, Wellness Labs agreed that, for a period of two years after the expiration or termination of the Franchise Agreement, it would not, among other things, engage in any "Competitive Business," either directly or indirectly, within fifty miles from the Fredericksburg Lab (the "Non-Compete"), with "Competitive Business" defined to mean, among other things, any business that offers "drug screening, wellness, clinical, or other testing services" that are "the same as or similar to those provided by ARCpoint Businesses or in which Confidential Information could be used to the disadvantage of Franchisor, its Affiliate(s) or its other franchisees."

34.     Defendant Freitag expressly agreed to comply with this Non-Compete in the Non-Compete Agreement, as well as in the Guaranty.

35.     In Section 17.3 of the Franchise Agreement, Wellness Labs agreed that if it operated any other business following termination or expiration that did not violate Section 17.2,

it would not "use any reproduction, counterfeit, copy or colorable imitation of the Marks, either in connection with such other business or the promotion thereof, that is likely to cause confusion, mistake or deception, or that is likely to dilute Franchisor's rights in the Marks."

36.    Further, Wellness Labs agreed in Section 17.3 not to "utilize any designation of origin, description or representation that falsely suggests or represents an association or connection with Franchisor."

37.    Section 22.2 of the Franchise Agreement, titled "Injunctive Relief," provides as follows:

> As any breach by Franchisee of any of the restrictions contained in Sections 6, 7 and 16 would result in irreparable injury to Franchisor, and as the damages arising out of any such breach would be difficult to ascertain, in addition to all other remedies provided by law or in equity, Franchisor shall be entitled to seek injunctive relief (whether a restraining order, a preliminary injunction or a permanent injunction) against any such breach, whether actual or contemplated and Franchisee shall be responsible for Franchisor's reasonable attorneys' fees incurred in pursuing the same. Franchisor's right to seek injunctive relief will not affect the parties' waiver of jury trial . . . .

38.    Similarly, Section 8 of the Non-Compete Agreement provides that, because violations of the covenants will cause "immediate and irreparable harm, damage and injury that cannot be fully compensated for by an award of damages or other remedies at law," in the event of a violation AFG "shall be entitled, as a matter of right, to an injunction from any court of competent jurisdiction restraining any further violation by [Freitag] of this Agreement without any requirement to show any actual damage or to post any bond or security."

39.    Section 22.4 of the Franchise Agreement provides that if AFG is the prevailing party in any proceeding brought to enforce the Franchise Agreement, it shall be entitled to reimbursement of its costs, including reasonable accounting and attorneys' fees.

40.    Section 23.1 of the Franchise Agreement provides that South Carolina law

governs all claims that in any way relate to or arise out of the Franchise Agreement or any of the dealings of the parties, except to the extent the agreement is governed by the U.S. Trademark Act of 1946 or other federal law.

41.     AFG and Wellness Labs agreed in Section 23.2 of the Franchise Agreement to consent to venue and jurisdiction for any litigated claims "solely in the appropriate state or federal court located in or serving Greenville County, South Carolina."

42.     In Section 23.6 of the Franchise Agreement, AFG and Wellness Labs agreed to "irrevocably waive trial by jury in any action, whether at law or equity, brought by either of them against the other."

43.     In Sections 9(b)-(d) of the Non-Compete Agreement, Defendant Freitag agreed to choice of law, venue, jurisdiction, and prevailing party provisions substantively identical to those contained in the Franchise Agreement.

## C.     Termination of the Franchise Agreement and Defendants' Unlawful Conduct

44.     On or about May 4, 2021, AFG sent a Notice of Default to Defendants regarding their persistent failure to report gross sales, as required by the Franchise Agreement, and noting that Defendants had failed to remit required payments to AFG in the manner required by the Franchise Agreement since March 2018. The May 4 letter also demanded that Wellness Labs remit to AFG $17,169.14 in unpaid royalty fees and marketing fund contributions. A true and correct copy of this Notice of Default is attached as **Exhibit C** and incorporated herein by reference.

45.     Pursuant to that Notice of Default, AFG provided Defendants with thirty days within which to bring themselves into full compliance with the Franchise Agreement, including: (a) submitting all missing gross sales reports; and (b) remitting to AFG $17,169.14 in unpaid

royalty fees and marketing fund contributions, as well as any additional sums due and owing on account of the missing gross sales reports.

46.     Notwithstanding Defendants' receipt of the Notice of Default, Defendants failed to produce the required gross sales reports or to pay any past due amounts.

47.     As a result, on or about August 12, 2021, AFG sent a Notice of Termination to Defendants, wherein AFG terminated the Franchise Agreement, effective immediately. A true and correct copy of this Notice of Termination is attached as **Exhibit D** and incorporated herein by reference.

48.     That Notice of Termination also reminded Defendants of their Non-Compete and Post-Termination Obligations under the Franchise Agreement, including their obligation to immediately pay all sums owed to AFG.

49.     Defendants failed to respond to AFG's August 12, 2021 Notice of Termination, and they also failed to comply with their Post-Termination Obligations or their Non-Compete.

50.     Specifically, AFG learned that notwithstanding the termination of the Franchise Agreement, and notwithstanding Defendants' receipt of AFG's Notice of Termination, Defendants continued to operate the Fredericksburg Lab, and they continued to use ARCpoint's intellectual property in connection with that operation, including the ARCpoint Mark, trade secrets, and other confidential and proprietary information.

51.     As one example, after their receipt of the August 12 Notice of Termination, Defendants continued to advertise the Fredericksburg Lab on social media as "ARCpoint Labs Fredericksburg," as shown in the captured image below:



52.    And Defendant Freitag continued to identify himself on LinkedIn as the "Owner and President" of "ARCpoint Labs of Fredericksburg":



53.     As a result of Defendants' post-termination unlawful conduct, AFG, through counsel, sent a third letter to Defendants, on November 5, 2021, demanding that they comply with their Non-Compete and Post-Termination Obligations, including providing AFG all missing gross sales reports and to remitting to AFG unpaid royalty fees and marketing fund contributions. A true and correct copy of this November 5 demand letter is attached as **Exhibit E** and incorporated herein by reference.

54.     Defendants also did not respond to the November 5 demand letter, nor have they complied with their Non-Compete or Post-Termination Obligations under the Franchise Agreement and Non-Compete Agreement.

55.     Specifically, on December 15, 2021, an investigator visited the Fredericksburg Lab and observed that the lab was open for business and, as illustrated in the photos below, operating under the name "ARCPOINT LABS OF FREDERICKSBURG," as if Defendants were still authorized franchisees of AFG's franchise system.









56.     This conduct by Defendants has caused and is likely to continue to cause confusion and mistake among the consuming public in a manner that constitutes not only breach of the Franchise Agreement and Guaranty, but also service mark infringement, unfair competition, false designation of origin, and unfair trade practices under federal and state law.

57.     Further, Defendants' continued operation of the Fredericksburg Lab constitutes a violation of the Non-Compete obligations of the Franchise Agreement and the Non-Compete Agreement, and it necessarily involves the use by Defendants of the trade secrets, confidential information, and proprietary materials associated with Plaintiffs' ARCpoint franchise system, which was only provided to Defendants as a result of their agreeing to be bound by the Non-Compete.

58.     Plaintiffs have invested considerable resources over the years in developing their ARCpoint franchise system, which is characterized not only by the ARCpoint Mark, but also the confidential and proprietary materials that are used as part of that system, including: uniform standards and procedures for business operations and for the collection and facilitation of diagnostic testing; procedures and strategies for sales, marketing, advertising, and promotions, including national digital marketing strategies and campaigns and social media platforms; business techniques; pricing guidelines; a confidential and proprietary operations manual; a nationwide network of supplier relationships; customer relationship practices; testing processes; client relationships and customer lists; training curricula, methods, and certifications; and ongoing support and education.

59.     This franchise system provides ARCpoint franchisees with the tools they need to compete successfully in the highly competitive laboratory services field, and it would be extremely detrimental to Plaintiffs not only if their rights in the ARCpoint Mark were diluted,

but also if their confidential and proprietary information were disclosed or used for the benefit of their competitors.

60.    As a result, Plaintiffs have a legitimate interest in protecting their investment and preventing Defendants from misappropriating the goodwill associated with Plaintiffs and their business and franchise system within the same territory and even out of the same building where Defendants formerly served as representatives of the ARCpoint Franchise System.

**FIRST CLAIM FOR RELIEF**
**(Breach of the Franchise Agreement – Against Wellness Labs)**

61.    Plaintiffs reallege and incorporate by reference, as if set forth fully herein, the allegations contained in the foregoing paragraphs.

62.    AFG and Wellness Labs entered into the Franchise Agreement, as amended.

63.    The Franchise Agreement is a written, valid, and enforceable contract, and AFG has performed its obligations thereunder and seeks to protect the legitimate business interests of AFG.

64.    Wellness Labs breached the Franchise Agreement by: (1) operating a competing testing and screening services business at the Fredericksburg Lab location; (2) making unauthorized use of the ARCpoint Mark and various confidential and proprietary materials and information associated with Plaintiffs' ARCpoint franchise system in connection with that competing business; (3) failing to make certain payments to AFG, including royalty fees and marketing fund contributions; (4) failing to provide AFG with monthly gross sales reports; and (5) failing to comply with its Post-Termination Obligations.

65.    As a result of these breaches of the Franchise Agreement by Wellness Labs, AFG has been damaged in an amount to be proven at trial, but not less than $17,169.14.

## SECOND CLAIM FOR RELIEF
### (Breach of the Guaranty – Against Freitag)

66.     Plaintiffs reallege and incorporate by reference, as if set forth fully herein, the allegations contained in the foregoing paragraphs.

67.     Concurrently with the signing of the Franchise Agreement, Freitag individually executed the Guaranty.

68.     The Guaranty is a written, valid, and enforceable contract, and AFG has performed its obligations thereunder and seeks to protect the legitimate business interests of AFG.

69.     Freitag breached the Guaranty by: (1) operating a competing testing and screening services business at the Fredericksburg Lab location; (2) making unauthorized use of the ARCpoint Mark and various confidential and proprietary materials and information associated with Plaintiffs' ARCpoint franchise system in connection with that competing business; (3) failing to make certain payments to AFG, including royalty fees and marketing fund contributions; (4) failing to provide AFG with monthly gross sales reports; and (5) failing to comply with post-termination and de-identification obligations.

70.     As a result of these breaches of the Guaranty by Freitag, AFG has been damaged in an amount to be proven at trial, but not less than $17,169.14.

## THIRD CLAIM FOR RELIEF
### (Breach of the Non-Compete Agreement – Against Freitag)

71.     Plaintiffs reallege and incorporate by reference, as if set forth fully herein, the allegations contained in the foregoing paragraphs.

72.     Concurrently with the signing of the Franchise Agreement, Freitag individually executed the Non-Compete Agreement.

73.     The Non-Compete Agreement is a written, valid, and enforceable contract, and AFG has performed its obligations thereunder and seeks to protect the legitimate business interests of AFG.

74.     Freitag breached the Non-Compete Agreement by: (1) operating a competing testing and screening services business at the Fredericksburg Lab location; and (2) making unauthorized use of the ARCpoint Mark and various confidential and proprietary materials and information associated with Plaintiffs' ARCpoint franchise system in connection with that competing business.

75.     As a result of these breaches of the Non-Compete Agreement by Freitag, AFG has been damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Federal Service Mark Infringement – Against All Defendants)

76.     Plaintiffs reallege and incorporate by reference, as if set forth fully herein, the allegations contained in the foregoing paragraphs.

77.     Defendants' acts with respect to the Fredericksburg Lab constitute infringement of Plaintiffs' federally-registered ARCpoint Mark, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, entitling Plaintiffs to both compensatory and treble damages.

## FIFTH CLAIM FOR RELIEF
### (Federal Unfair Competition and False Designation of Origin – Against All Defendants)

78.     Plaintiffs reallege and incorporate by reference, as if set forth fully herein, the allegations contained in the foregoing paragraphs.

79.     Defendants' acts with respect to the Fredericksburg Lab constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), entitling Plaintiffs to both compensatory and treble damages.

## SIXTH CLAIM FOR RELIEF
### (Common Law Unfair Competition – Against All Defendants)

80.     Plaintiffs reallege and incorporate by reference, as if set forth fully herein, the allegations contained in the foregoing paragraphs.

81.     Defendants' acts with respect to the Fredericksburg Lab constitute unfair competition and unlawful trademark and service mark infringement under the common law of the State of South Carolina.

## SEVENTH CLAIM FOR RELIEF
### (Violation of the South Carolina Unfair Trade Practices Act – Against All Defendants)

82.     Plaintiffs reallege and incorporate by reference, as if set forth fully herein, the allegations contained in the foregoing paragraphs.

83.     The foregoing conduct by Defendants constitutes unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade and commerce.

84.     The foregoing conduct by Defendants is unlawful and a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 *et seq.*

85.     As a result of Defendants' use and employment of unfair and deceptive methods, acts, and practices declared unlawful by S.C. Code Ann. § 39-5-20, Plaintiffs have suffered ascertainable losses and damages that are actionable under SCUTPA.

86.     Defendants' violations were willful and knowing, including because Defendants knew or should have known that their conduct was a violation.

87.     Pursuant to SCUTPA, including S.C. Code Ann. § 39-5-140, Plaintiffs are entitled to recover their damages, as well as up to three times the actual damages sustained and such other relief as the Court deems necessary or proper.

## EIGHTH CLAIM FOR RELIEF
### (Preliminary and Permanent Injunction – Against All Defendants)

88.    Plaintiffs reallege and incorporate by reference, as if set forth fully herein, the allegations contained in the foregoing paragraphs.

89.    Defendants continue to provide testing and screening services at the Fredericksburg Lab location, despite termination of the Franchise Agreement.

90.    The testing and screening services Defendants are providing at the Fredericksburg Lab compete with the services provided by the ARCpoint business and franchise system.

91.    In providing their competing testing and screening services, Defendants continue to use the ARCpoint Mark without authorization.

92.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to their business, reputation, and customer goodwill. Such conduct will, among other things, impair the ability of Plaintiffs and their franchisees to operate successful ARCpoint businesses in the territory around which the Fredericksburg Lab is located.

93.    Plaintiffs will prevail on their claims due to Defendants' trademark infringement and their violations of the Franchise Agreement, Guaranty, and Non-Compete Agreement.

94.    Defendants' conduct is causing, and is likely to cause, substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to have injunctive relief.

95.    As a result, Defendants should be immediately enjoined and restrained from continuing to provide testing and screening services within fifty miles from the Fredericksburg Lab and from using the ARCpoint Mark.

## NINTH CLAIM FOR RELIEF
### (Attorneys' Fees – Against All Defendants)

96.    Plaintiffs reallege and incorporate by reference, as if set forth fully herein, the allegations contained in the foregoing paragraphs.

97.    The Franchise Agreement, as guaranteed by the Guaranty, and the Non-Compete Agreement provide that AFG is entitled to reimbursement of its costs, including reasonable accounting and attorneys' fees, in connection with any proceeding brought to enforce the Franchise Agreement and the Non-Compete Agreement.

98.    Further, this case constitutes an exceptional case under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), entitling Plaintiffs to an award of their reasonable attorneys' fees.

99.    Plaintiff hereby demands that Defendants reimburse them for all costs and expenses (including attorneys' fees) relating to the prosecution of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray the Court provide relief as follows:

1.    That the Court preliminarily and permanently restrain and enjoin the Defendants and their principals, agents, servants, employees, attorneys, and other persons in active concert or participation with them, from:

   a)    engaging in, participating in, or deriving any benefit from a "Competitive Business" (as defined in the Franchise Agreement) within fifty miles from the Fredericksburg Lab, until two years has passed from the date of entry of the Order of this Court granting the requested injunction;

   b)    any and all further unauthorized use of the ARCpoint Mark, or any other word, term, symbol, or device confusingly similar to the ARCpoint Mark,

as a trademark, service mark, trade name, or other attention-getting device or triggering mechanism for the sale of Defendants' business and services; and

c)    making any oral or written representations that Defendants are connected, associated, or affiliated with Plaintiffs or otherwise holding themselves or their businesses out as being connected, associated, or affiliated in any way with Plaintiffs, including referring to their business as "formerly ARCpoint";

2.    That the Court order Defendants to transfer without financial encumbrance to AFG or its designee all telephone numbers advertised by Defendants under the name ARCpoint or, or any colorable imitations thereof, both before and after termination of the Franchise Agreement;

3.    That the Court direct Defendants to recall and deliver up to Plaintiffs all proprietary materials and confidential information of Plaintiffs and the ARCpoint business and franchise system, and all signs, manuals, advertising materials, stationery, forms, and any other items that display or are associated with the ARCpoint Mark;

4.    That Plaintiffs have and recover from Defendants monetary damages consistent with the Lanham Act and applicable state law, including, without limitation, compensation for Plaintiffs' damages, Defendants' profits or other financial benefits (and an accounting thereof) from their trademark infringement, unfair competition, deceptive trade practices, and breach of contract, all in amounts to be determined at trial, and to be trebled as permitted under law because of Defendants' willful and deliberate activities described herein;

5.    That Plaintiffs recover from Defendants their attorneys' fees and all other costs

and expenses incurred by Plaintiffs in pursuing this action, pursuant to 15 U.S.C. § 1117, relevant state and common law, and the parties' agreements;

6.      That Plaintiffs be awarded pre- and post-judgment interest; and

7.      That the Court grant Plaintiffs such other and further relief, both general and specific, as the Court may deem just and proper.

This 19th day of January, 2022.

Respectfully submitted,

*s/Thomas E. Vanderbloemen*
Thomas E. Vanderbloemen (Fed. ID #9858)
tom@vanderbloemenlaw.com
VANDERBLOEMEN LAW FIRM, P.A. 330
East Coffee Street
Greenville, SC 29601
(864) 250-9530

*Pro Hac Vice* Motion forthcoming for:

Anne Caiola
James Faris
CAIOLA & ROSE, LLC
125 Clairemont Avenue
Suite 240
Decatur, GA 30030
(470) 300-1020
annie@caiolarose.com
jimmy@caiolarose.com

Counsel for Plaintiffs